UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAN HOANG BUI,<br><br>            Petitioner,<br><br>    v.<br><br>BRUCE SCOTT, et al.,<br><br>            Respondents. | Case No. 2:25-cv-02268-TMC-GJL<br><br>ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER |

## I.    INTRODUCTION

Petitioner Tan Hoang Bui seeks a temporary restraining order ("TRO") from this Court to obtain his release from immigration detention and prevent his deportation to an unknown third country. Dkt. 2. For the reasons set forth below, the Court DENIES Petitioner's motion.

## II.    BACKGROUND

### A.    Petitioner's re-detention

Petitioner is a 51-year-old national of Vietnam who was admitted to the United States at nine years old. Dkt. 2-1 at 1–3. Petitioner became a lawful permanent resident on March 14, 1988. *Id*. at 3. Petitioner was convicted of voluntary manslaughter in 1996 and served 4 years in prison, after which an Immigration Judge ("IJ") ordered his removal to Vietnam. *Id*. at 83–86. But because Vietnam refused to repatriate its citizens if they had left the country before 1995,

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 1

Petitioner's deportation was never carried out. Petitioner was released from custody under an order of supervision ("OSUP") on June 12, 2001. *Id*. at 88.

Petitioner now resides in Portland, Oregon with his wife and son, both U.S. citizens. *Id*. at 6–7. Mr. Bui also has a child from a prior relationship, a 31-year-old U.S. citizen who lives in California. *Id*. at 8. Petitioner has obtained his GED and works as an auto mechanic. *Id*. at 48. Petitioner's wife recently stopped working as a nurse after she suffered a significant concussion and was placed on a cardiac monitor, and Petitioner has been the primary caretaker for his family. *Id*. at 16, 48. On October 28, 2025, Immigration and Customs Enforcement ("ICE") re-detained Petitioner while he was driving his wife to a medical appointment in Portland. *Id*. at 48. According to Petitioner:

> ICE officers then took Mr. Bui into custody and took him to the Portland ICE office. There Mr. Bui was told by an officer he didn't know why he had been targeted for pick up, but then the officer provided him with a document in Vietnamese. He informed the officer he couldn't read the document as he does not read Vietnamese. ICE did not give him any reasons for his re-detention. He was then provided a document in English and asked to fill it out. He was given no further information but was told it was to get his travel document, and he was not provided a copy. However, Mr. Bui does not believe that form was not [sic] the Vietnamese self-declaration form required to process travel document requests from the United States, as Petitioner says ICE has never shown him that form or asked him to complete it. Mr. Bui was also told he would be given an Order of Deferral hearing within 10 days. He was then taken to the [Northwest ICE Processing Center ("NWIPC")] in Tacoma, Washington, and he has been detained since October 28, 2025. No Order of Deferral hearing has been scheduled to date for Mr. Bui, and no officer at the NWIPC has since discussed his case with him. He has not been provided with any documents revoking his release. The encounter on October 28, 2025, was the last time an ICE officer has discussed his case with him.
>
> At no time since his re-detention on October 28, 2025, has any ICE officer conducted an initial interview to explain to him the reasons why his release on supervision was revoked or provide him an opportunity to explain why his removal to Vietnam is not likely or foreseeable. ICE has not conducted a revocation custody review. Additionally, ICE did not have a travel document for Petitioner at the time of his re-detention. ICE has never asked Petitioner to complete the Self-Declaration Form for Vietnam that is required for Vietnam to process a request by the United States for a travel document.

> Mr. Bui does not have a Vietnamese passport, but he does have a birth certificate from Vietnam. DHS has had a copy of this document both before his removal proceedings, during the duration of his removal proceedings, during the duration of his time in custody post-removal order, and during the duration of his time post-release from custody in 2001, stemming back decades. ICE has still been unable to secure a travel document for Mr. Bui to removed him from the United States.

Dkt. 2 at 4–5.

On November 13, 2025, Petitioner filed a petition for a writ of habeas corpus and a motion for a TRO, arguing that his removal to Vietnam is not reasonably foreseeable and asking the Court to order his release from detention. Dkts. 1, 2. Petitioner also requested that the Court prohibit his removal to a country other than Vietnam without sufficient due process. Dkt. 2 at 2. Respondents Cammilla Wamsley, Kriti Noem, Todd Lyons, the Department of Homeland Security ("DHS"), and ICE opposed the motion on November 18, 2025. Dkt. 7.[1] Respondents maintain that Petitioner is unlikely to succeed on the merits because Petitioner's removal to Vietnam is now reasonably foreseeable, justifying his detention. Dkt. 7 at 9–13.

**B.    Deportation of Vietnam War Refugees**

After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020). The United States accepted many Vietnamese refugees, including Petitioner. *See id.*; Dkt. 2 at 2. Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. *Trinh*, 466 F. Supp. 3d at 1083. In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. *Id.* This meant that

---

[1] Respondent Bruce Scott, the warden of the facility where Petitioner is detained, is not represented by the United States and has not responded to the motion. *See* Dkt. 7 at 1.

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 3

Vietnamese immigrants who had arrived before that date would not be considered for repatriation. *Id.*

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." *Id.* Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. *Id.* After that time expired, most detainees were released on orders of supervision. *Id.*

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. *Id.* Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them." *Id.*

In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. *Id.* at 1083–84. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. *Id.* at 1084. ICE also began re-detaining some individuals who had been released on orders of supervision. *Id.*

But this policy did not last long. *Id.* In 2018, following additional meetings between the United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." *Id.* ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal. *Id.*

In 2020 the policy changed again. That November, the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. Dkt. 2 at 7. Under Section 4 of the MOU, Vietnam affirmed that it intends to issue travel documents and accept the removal of individuals if they meet certain

conditions. *Id.*² The individual must (1) have Vietnamese citizenship and not the citizenship of any other country; (2) have been ordered removed by the United States and finished serving any U.S. prison sentence; and (3) have resided in Vietnam before arriving in the United States and not have the right to reside in any other country. *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025). The fourth factor is redacted in the public version of the MOU. *Id.*; Dkt. 2 at 7. Petitioner asserts that from September 2021 to September 2023, the U.S. government deported only four pre-1995 Vietnamese immigrants. Dkt. 2 at 7.

In support of its opposition to the TRO motion, ICE submitted a declaration from Daniel Strzelczyk, the Deportation Officer at NWIPC who works for ICE's Office of Enforcement and Removal Operations ("ERO"). Dkt. 8 ¶ 1. Strzelczyk avers ERO detained Petitioner after it determined removal was likely "due to cooperation between the United States and Vietnam" and that "an oral OSUP revocation notice was given to Petitioner at the time he was taken into custody and the Petitioner refused to make any statement against it at that time." *Id.* ¶ 7. According to Strzelczyk, "[p]revious memoranda of understanding regarding removal of Vietnamese citizens based on their entry date is no longer in effect. The date of entry is no longer relevant regarding whether travel documents can be obtained from the government of Vietnam." *Id.* ¶ 8. Instead, "[t]he government of Vietnam has agreed to increase cooperation with the United States and generally seeks to issue travel documents within 30 days of a request being made" and "[s]ince February 2025, every travel document requested by DHS has been issued." *Id.* ¶¶ 9–10. Strzelczyk also notes that, as of September 11, 2025, there have been 569 removals of Vietnamese citizens to Vietnam in the fiscal year 2025. *Id.* ¶ 11.

---

² Petitioner cites the MOU as Exhibit H but only included Exhibits A–G with his motion for a TRO. *See* Dkt. 2-1.

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 5

Finally, Strzelczyk claims that "if DHS or the alien has documentation of Vietnamese citizenship, a travel document will be issued without an interview" but for noncitizens without documentation of Vietnamese citizenship, "the Vietnamese government will conduct an interview." *Id*. ¶ 12. After a request for travel documents is made, the Vietnamese government typically takes 30 days to issue a travel document. *Id*. Strzelczyk does not say, however, whether he or anyone else has yet requested a travel document for Petitioner. *Id*.

### III.    LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction).

A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. The movant must make a showing on each element of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A likelihood of success on the merits "is the most important" *Winter* factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). However, "where the 'balance of hardships . . . tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

//

//

//

## IV. DISCUSSION

**A.  Likelihood of success on the merits**

    1.  *Legality of re-detention*

The Court turns first to what Petitioner has shown. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Petitioner is a noncitizen who has been present in the United States for 42 years. Dkt. 1 ¶ 1. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693. Having been detained already for a cumulative nine months after an IJ ordered his removal, Dkt. 1 ¶ 4, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533

U.S. at 701. And Petitioner's evidence showing (1) the historically low number of removals to Vietnam for immigrants who arrived in the U.S. pre-1995, *see* Dkt. 1 ¶¶ 40–46; (2) the government's failure to deport him for 25 years, after it first requested travel documents in 2001, *see* Dkt. 8 ¶ 6; and (3) that the government likely detained him without securing a travel document from Vietnam, or even formally requesting one under the 2020 MOU, *see* Dkt. 1 ¶ 81; Dkt. 8 ¶¶ 7–8, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. And Respondents have demonstrated that, with full briefing on the underlying habeas petition, they may be able to rebut Petitioner's evidence.

Through Strzelczyk, Respondents provided evidence that (1) the previous MOU regarding removal of Vietnamese citizens is no longer in effect, and the government of Vietnam now generally seeks to issue travel documents within 30 days of the request; (2) since February 2025, every travel document requested by DHS has been issued; (3) DHS has frequent charter flights to Vietnam; (4) as of September 11, 2025, there have been 569 removals of Vietnamese citizens to Vietnam in the fiscal year 2025; and (5) the Vietnamese government will issue travel documents without an interview to people who, like Petitioner, have documentation of their Vietnamese citizenship. Dkt. 8 ¶¶ 9–12; *see* Dkt. 1 ¶ 36 (noting that Petitioner has a birth certificate from Vietnam).

Further factual development would be helpful here, as Respondents have not yet received Petitioner's A-file, or immigration records. Dkt. 7 at 7 n.4. It is also unclear whether Strzelczyk has submitted a travel document request for Petitioner, which supports an argument that Petitioner's detention has become indefinite. And Strzelczyk's cursory explanations of significant foreign policy developments—such as "previous memoranda of understanding

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 8

regarding removal of Vietnamese citizens based on their entry date is no longer in effect," Dkt. 8 ¶ 8—would be far more persuasive if supported by more specific facts or corroborated with documentary evidence. Considering the limited record, however, Respondents offer sufficient evidence to undermine Petitioner's likelihood of success on the merits and preclude his immediate release on a TRO.

        2.    *Third-country removal*

Respondents have stipulated that they would not remove Petitioner to a third country during the pendency of this case. Dkt. 5. Accordingly, the Court will not elaborate on Petitioner's likelihood of success on the merits of his third-country removal claims beyond incorporating its order granting this stipulation on November 14, 2025. Dkt. 6.

**B.    Irreparable harm, balance of equities, and the public interest**

The remaining *Winter* factors do not favor Petitioner. With respect to irreparable harm, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Further, the "Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). The Court acknowledges that Petitioner's detention places a significant burden on his family, for whom he is the primary caretaker. Dkt. 2-1 at 48. But because Respondents have provided evidence that they will be able to deport Petitioner within 30 days of requesting a travel document, it is unclear that his detention is either indefinite or unlawful.

ORDER DENYING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER - 9

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citation omitted). While there is a countervailing "public interest in prompt execution of removal orders," *Nken v. Holder,* 556 U.S. 418, 436 (2009), it is well-established that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)). Because Petitioner requests immediate release but has not shown it is likely his detention is unlawful, these factors favor Respondents and their interest in enforcing immigration law.

## V.    CONCLUSION

For these reasons, the Court DENIES Petitioner's motion for a TRO.

Dated this 21st day of November, 2025.

Tiffany M. Cartwright
United States District Judge